J-A07026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.N. | : | |
| | : | |
| Appellant | : | No. 1393 WDA 2016 |

Appeal from the Order August 18, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No:  FD-09-009023-005

BEFORE:   OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 05, 2017**

A.N. ("Father") appeals from the order entered August 18, 2016, in the Court of Common Pleas of Allegheny County, which denied the petition to contest relocation filed by J.L. ("Mother"), but granted Mother's petition for special relief, and awarded her legal custody of the parties' son, A.N. ("Child"), with respect to education decisions.   After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.   Child was born in June 2009.   The record reveals that Mother initially sought to have Child adopted, and placed Child with a private adoption agency.   Father did not consent to Child's adoption, and custody

_____

[*] Retired Senior Judge assigned to the Superior Court.

proceedings ensued. At the start of the instant proceedings, the parties remained subject to an order entered August 21, 2015, which awarded shared legal and physical custody of Child. However, the order provided that Father would have primary legal custody of Child "with respect to school selection." Order, 8/21/15, at ¶ 2. The order further provided that Father "shall seek Mother's input and keep Mother informed as it relates to decisions affecting school selection." *Id.*

On August 3, 2016, Mother filed a petition to contest relocation and petition for special relief. In her petitions, Mother averred that Father planned to relocate from Kennedy Township, Allegheny County, to Coraopolis, Allegheny County.[1] Petition to Contest Relocation and for Special Relief – Interim Order, 8/3/16, at ¶ 7. Mother averred that Father's previous home was in the Montour School District, where Child attended kindergarten and first grade. *Id.* at ¶ 7, 16, 18-19. Mother averred that Father's new home was in the Cornell School District, and that Father planned to enroll Child in Cornell. *Id.* at ¶ 7, 14, 16. Mother averred that Father did not seek her input regarding this relocation, and that a change in school districts from Montour to Cornell would be contrary to Child's best

_____

[1] Despite Mother's averment that Father was planning to move, it appears that Father moved the day before Mother filed her petitions. *See* Petition to Contest Relocation and for Special Relief – Interim Order, 8/3/16, at Exhibit B (letter from Father indicating that he would be moving on August 2, 2016). At very least, Father had already moved by the time of the custody hearing on August 9, 2016.

interest, because Montour is superior academically to Cornell. *Id.* at 10, 14-16. Mother further averred that Child should attend school in the North Hills School District, where she resides, because North Hills also is superior academically to Cornell. *Id.* at 15-16. Mother requested that the trial court enter an order "requiring Father to comply with the procedural provisions of 23 Pa. C.S.A. § 5337 prior to his relocation with the minor child[,]" and awarding her interim legal custody of Child with respect to school selection, so that Child could be enrolled in North Hills. Petition to Contest Relocation and for Special Relief – Interim Order, 8/3/16, at 2, 5, ¶ 23 (unpaginated).

The trial court held a hearing to address Mother's petitions on August 9, 2016. Following the hearing, on August 19, 2016, the court entered an order denying Mother's petition to contest relocation, but granting Mother's petition for special relief and awarding Mother legal custody of Child with respect to education decisions. Father timely filed a notice of appeal on September 19, 2016, along with a concise statement of errors complained of on appeal.[2]

_____

[2] Father had thirty days to appeal the custody order, meaning that his notice of appeal would normally be due by September 18, 2016. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken."). However, because September 18, 2016, was a Sunday, Father's notice of appeal was timely filed on September 19, 2016. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

Father now raises the following issues for our review, which we have reordered for ease of disposition.

I. The trial court committed abuse of discretion in its application of 23 Pa.C.S.A. § 5328(a)(4).

II. The trial court committed abuse of discretion in its application of 23 Pa.C.S.A. § 5328(a)(6).

[III.] The trial court erred in finding there was sufficient evidence presented at trial to establish the decrease in Father's legal custody would best serve the needs and welfare of the child.

[IV.] The trial court committed abuse of discretion in determining that a relocation occurred and that addressing Mother's petition to contest relocation was legally appropriate.

Father's Brief at 6-10 (unnecessary capitalization omitted).[3, 4]

We consider these issues mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to

_____

[3] We note with disapproval that Father failed to include a statement of questions involved in his brief. **See** Pa.R.A.P. 2111(a) (providing that an appellant's brief must include a statement of questions involved). The issues quoted above are taken from the argument section of Father's brief.

[4] Mother argues that this appeal should be dismissed due to Father's failure to comply with the Rules of Appellate Procedure. Mother's Brief at 11, 28. While we agree that Father's brief violates the Rules in several respects, we do not find that these violations are substantial enough to warrant dismissal. **See** Pa.R.A.P. 2101 (providing that an appeal may be dismissed if an appellant's brief contains substantial defects). We caution Father and his counsel that they should strive to comply fully with the Rules in any future appeals.

issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.

- 5 -

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Trial courts must consider an additional ten factors when considering a parent's request to relocate. *See* 23 Pa.C.S.A. § 5337(h). "Relocation" is defined as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322.

Instantly, in its opinion accompanying the order on appeal, the trial court found that Father did not "relocate" as that term is defined in Section 5322. Trial Court Opinion, 8/19/16, at 9. The court explained that Father's move did not significantly impair Mother's ability to exercise her custody rights, because the parties' custody exchange location remains the same, and because Child's new school would actually be closer to Mother's residence than Child's previous school. *Id.* The court also discussed each of the Section 5328(a) factors. The court found that Sections 5328(a)(1) and (10) weigh in favor of Mother, while Section 5328(a)(6) weighs in favor of Father. *Id.* at 3-8. The court found that the remaining factors either weighed in favor of both parties, or did not weigh in favor of either party. In concluding that Mother should be awarded primary legal custody of Child with respect to education decisions, the court emphasized that Mother made an effort to research what school would be best for Child, and presented evidence demonstrating that North Hills is superior academically to Cornell. *Id.* at 7. The court further emphasized that Father showed less interest in Child's education, and apparently made little effort to conduct similar research. *Id.*

In his first issue on appeal, Father argues that the trial court abused its discretion by concluding that Section 5328(a)(4) weighs equally in favor of both parties. Father's Brief at 6-7. Father contends that he and his wife "were the only parents the minor child has known since birth[,]" and that he has "provided the only stability in the minor child's life." *Id.*

The trial court found as follows with respect to Section 5328(a)(4), in relevant part.

> [Child] attended Kindergarten and 1st grade at Forest Grove Elementary School in the Montour School District which was Father's home district. Given Father's move to the Cornell School District, and Mother's continuing residence in the North Hills School District, a change of schools and school districts is unavoidable for [Child] this Fall. This disruption in [Child's] school life is solely attributable to Father, who chose to purchase a home outside the Montour School District, and to do so without prior notice to Mother.
>
> The parties testified that [Child] will already know a handful of students in the 2nd grade classes at both West View Elementary, where Mother favors enrolling him, and at Cornell Elementary School, which is favored by Father. Mother sought to emphasize that her family has resided in the North Hills School District for decades. Mother attended school there and thinks highly of its programs. Mother testified that she has encouraged [Child's] participation in community sports and activities, creating ties that would be reinforced by his enrollment in West View Elementary School.
>
> By contrast, Father has resided in four different school districts in recent years, although most of the moves were before [Child] reached mandatory school age. Father testified that, now that he has purchased a house, he plans to stay there "forever." Father testified that many children who participate in [Child's] dance class and soccer league also attend Cornell Elementary, and that this familiarity will ease [Child's] transition.

***

. . . . The [c]ourt finds this factor favors both parties equally.

Trial Court Opinion, 8/19/16, at 4-5.

Our review of the record belies Father's claim that he provides more stability for Child than Mother. The record reveals that Mother has had at least shared physical custody of Child since 2012, and even exercised primary physical custody of Child for about a month in 2014, due to Father's "DUI's [*sic*] and some arrests." N.T., 8/9/16, at 8, 20; **see also** Order of Court: Supervised Custody, 4/17/14. In addition, as stressed by the trial court, Father has moved repeatedly during Child's lifetime. N.T., 8/9/16, at 9. Father's most recent move was a source of significant instability in Child's life, as it resulted in Child having to leave his previous school. We discern no abuse of discretion by the court in concluding that Section 5328(a)(4) weighs equally in favor of both parties.

Father's second issue is that the trial court abused its discretion by awarding Mother legal custody of Child with respect to education decisions, despite its conclusion that Section 5328(a)(6) weighs in his favor. Father's Brief at 7-8. Father emphasizes that Child is close to his paternal half-sister C., and that allowing Mother to enroll Child in the North Hills School District would separate the two children. *Id.* at 8.

The trial court addressed Section 5328(a)(6) as follows.

> In [the Honorable Kathleen R.] Mulligan's 2015 Opinion, she wrote that "[Child's] relationship with his siblings, particularly [C.], is critical in the decision-making as to the appropriate school for [Child] to attend." At the time, Mother was pressing to transfer [Child] from the Montour School District

- 9 -

to the North Hills School District, where Mother desired [Child] to start 1st grade at West View Elementary School.

At a hearing before Judge Mulligan on June 23, 2015, extensive testimony was taken regarding the two School Districts, including testimony on academic programs and extracurricular activities. Mother had originally enrolled [Child] in the North Hills School District for Kindergarten, but withdrew him to accommodate Father's desire that [Child] attend Kindergarten in the Montour School District. Judge Mulligan wrote:

> While giving Mother credit for [her] reasonableness, it does not change the fact that the court finds that it is in [Child's] best interest to continue in the school that he has been in and [to] attend school with his sibling [C.]

> In the last year's custody litigation, Joseph Greenberg, Ph.D., prepared a psychological report on this case. While it did not specifically address the issue of [Child] and [C.] attending school together, the report stated a concern that were Mother to receive primary physical custody of [Child] "this would result in [Child] having significantly less contact with [C.]"

> Given Father's move out of the Montour School District, a change in school is unavoidable for [Child]. The question is whether he [will] attend 2nd grade in Mother's District, at West View Elementary, or in Father's District, at Cornell Elementary, where [C.] will be a student in the class behind him.

> Mother remains convinced that the school in her home district has more to offer [Child] than does the Cornell School District. Nonetheless, given the prospect of [Child] having more contact with [C.] if he attends school in Father's District, the [c]ourt finds this factor weighs in Father's favor.

Trial Court Opinion, 8/19/16, at 5-6.

We conclude that the trial court did not abuse its discretion. While the court found that Section 3528(a)(6) weighs in favor of Father, this was only one of the factors that it was required to consider when reaching its decision in this case. The court was free to weigh this factor as it saw fit, and to

conclude that other factors outweigh the benefit of having Child and C. attend the same school. This is especially true where, as here, Child and C. attend two different grades. N.T., 8/9/16, at 77, 83, 162. Mother testified during the custody hearing that Child rarely sees C. while at school, "except for after school while waiting for pick-up[.]" *Id.* at 76, 79. Similarly, Father's wife, H.N., testified that while at school Child and C. see each other "through the halls, sometimes at recess and after school waiting to be picked up." *Id.* a 111. When asked about the importance of having Child and C. attend the same school, Father did not testify that Child and C. see each other frequently while at school, but instead emphasized the positive relationship they have while at home. *Id.* at 163. Thus, it is unlikely that enrolling Child at a different school will cause significant harm to his relationship with C.

In his third issue on appeal, Father argues that the trial court erred by concluding that Mother presented sufficient evidence during the custody hearing to be awarded legal custody of Child with respect to education decisions.[5] Father's Brief at 10-14.

_____

[5] As part of his third and fourth issues, Father alleges that the trial court reached its decision as a result of gender bias. Father waived any claim of gender bias by failing to include it in his concise statement of errors complained of on appeal. *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived."). Nonetheless, we stress that our review of the record has not uncovered a shred of evidence that the court in this matter acted out of bias.

In its opinion, the trial court elaborated on this decision while discussing Section 5328(a)(10), which relates to which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child. The [c]ourt found as follows.

> Where the parties are deadlocked over where a child should go to school, the [c]ourt finds it helpful to examine each party's efforts to learn about the options available for the child. The [c]ourt also considers the care exercised by a party in gathering information tailored to the child's interests and needs. With this approach, the [c]ourt seeks not to identify a particular school for the child; rather, it seeks to identify the parent who would be more likely to reevaluate any decision if it proved flawed in practice, and to change course if he or she deemed it in the child's best interest.
>
> Mother entered into evidence four exhibits in support of her position that the North Hills School District, including West View Elementary School, offers a superior education to that available in the Cornell School District. She testified that, based on statistics from the Pennsylvania Department of Education and the Pennsylvania System of School Assessment, Cornell Elementary substantially underperforms in every subject, at every grade level tested when compared to West View Elementary. Mother's exhibits show that while the Montour and North Hills School Districts are relatively comparable in performance, North Hills ranks exponentially higher than Cornell based on the average of recent district-wide standardized test scores.
>
> Mother collected information from publicly available sources, as well as by speaking with staff in both the North Hills and Cornell School Districts. She testified that her research of the Cornell School District was limited somewhat because the District's website was under construction. Of particular interest to Mother was that West View Elementary offered instrumental and vocal music.
>
> Father and his wife appear to have done less research than Mother about [] [Child's] school options. Father was not concerned at Mother's evidence that the Cornell School District

lags far behind North Hills in test scores, stating that many people came from nothing and made something of themselves. Father testified that he hopes [Child] will take classes to develop his musical talents. However, on cross-examination, Father conceded that he does not know if Cornell Elementary offers instrumental music.

Mother entered into evidence the attendance report from the Montour School District's Forest Grove Elementary, where [Child] attended 1st grade last year[.] The exhibit indicated that [Child] was occasionally tardy when in Father's custody. Mother testified that despite the fact that she lived 25 minutes away from the school, [Child] was consistently on time when in her custody.

The [c]ourt finds that this factor favors Mother.

Trial Court Opinion, 8/19/16, at 7-8.

Our review of the record again supports the trial court's findings. During the custody hearing, Mother testified that she would like Child to attend the North Hills School District due to its high academic rankings, and due to the wide variety of extracurricular activities available to Child there. N.T., 8/9/16, at 19-20, 31-32. Mother also emphasized that she herself attended North Hills, and that she has friends and family who live in the district and whose children attend school there as well. *Id.* at 20.

Concerning academic rankings, Mother presented the trial court with a collection of Pennsylvania System of School Assessment rankings for 2016 and 2015. *Id.* at 38-39. Mother testified that North Hills ranked nineteenth in the state in 2016, and twenty-fourth in the state in 2015. *Id.* at 39. In contrast, Cornell ranked ninety-first in the state in 2016 and ninetieth in the state in 2015. *Id.* Concerning specific subjects, Mother testified that a

greater percentage of third graders tested as advanced or proficient in math and language arts at North Hills than at Cornell. *Id.* at 43. For example, 21.3 percent of third graders tested as advanced for language arts at North Hills, while only 9.3 percent tested as advanced at Cornell. *Id.*

In contrast, Father presented little, if any, testimony that having Child attend Cornell would be in his best interest academically. When asked what research he conducted regarding Cornell, Father testified that his wife "spoke with other mothers," and that he did a Google search. *Id.* at 157-58. Father explained, "I don't think it matters what school district you go to, I just believe that it's the -- it's the child and it's the individual." *Id.* at 116. When asked whether he believed that academic rankings "should be important in this case[,]" Father replied that he did not. *Id.* at 137. Father explained this position by stating, "there are plenty of people in this world who came from nothing and made themselves into something." *Id.*

Thus, the record confirms that Child's best interest will be served by awarding legal custody with respect to education decisions to Mother. Mother's testimony reveals that she conducted thorough research into which school district would provide Child with the best opportunity for academic success, and that she is committed to providing Child with a quality education. Father's testimony reveals that he did not conduct similar research, and that he was less focused upon insuring that the educational program at the school district was a good match for Child. Under these

circumstances, it was not an abuse of discretion for the trial court to conclude that Mother, rather than Father, should be making education decisions on Child's behalf.

Finally, Father's fourth issue is that the trial court abused its discretion by concluding "that a relocation occurred, and that addressing Mother's petition to contest relocation was legally appropriate." Father's Brief at 8-10. Father first suggests that the court abused its discretion because it "did not permit the child to relocate[.]" *Id.* at 8-9. Father then argues that his move was not a "relocation" as that term is defined in Section 5322. *Id.* at 9-10.

Father's fourth issue fails. As discussed above, the trial court found that Father did not "relocate" pursuant to Section 5322. The record supports this decision, as Father's new home is a relatively short distance from his previous home, and his move does not appear to have impaired Mother's custody rights in any way.

Accordingly, we conclude that the trial court did not err or abuse its discretion, and we affirm the August 19, 2016 order denying Mother's petition to contest relocation, but granting her petition for special relief and awarding her legal custody of Child with respect to education decisions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/5/2017</u>